UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FLEUR SOHTZ,                                                                 Docket No.:

                              *Plaintiff*,

                                                                                                     **COMPLAINT**

  -against-

NOOGATA TECHNOLOGIES, INC.,                                         **PLAINTIFF DEMANDS**
ASSAF EGOZI, Individually,                                                   **A JURY TRIAL**

                              *Defendants*.
---------------------------------------------------------------X

      Plaintiff, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

    1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

    2.    Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Southern District of New York and because the Plaintiff resides in this District.

## IDENTITY OF PARTIES

    3.    At all relevant times mentioned herein, Plaintiff Fleur Sohtz was and is a resident of the County, City and State of New York was employed by Defendants Noogata Technologies, Inc. and/or Assaf Egozi until April 29, 2022, when she was terminated because of her disabilities and in retaliation for her complaint of disability discrimination.

    4.    At all relevant times mentioned herein, Defendant Noogata Technologies, Inc. ("Noogata") is a Delaware corporation and has corporate headquarters in Tel Aviv, Israel.

5.      Noogata is a global leader in no code artificial intelligence ("AI") for business users.

6.      Defendant Assaf Egozi ("Egozi") is the Founder and Chief Executive Officer of Noogata, and Egozi was Plaintiff's supervisors throughout her employment and was responsible for terminating her employment.

7.      Given that (a) Plaintiff is domiciled in the County, City and State of New York, (b) Noogata is a Delaware corporation with headquarters in Israel and (c) Egozi is domiciled in Israel, there is complete diversity of the parties and the amount in controversy exceeds $75,000, so that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

8.      In November 2020, Sohtz was introduced to Noogata, an Israeli start-up involved in artificial intelligence ("AI").

9.      At that time, Sohtz was employed as Chief Marketing Officer at Team8, a global venture group that builds and backs technology companies at the intersection of artificial intelligence, cybersecurity, data, fintech, enterprise software, and infrastructure.

10.     Noogata was a company within Team8's Enterprise foundry fund, and Team8 provided Noogata's seed investment.

11.     As part of her duties for Team8, Sohtz, who has special expertise in the data market, was tasked with assisting Noogata with its market position to prepare the company to launch, which is known as "coming out of stealth."

12.     During her work with Noogata, Sohtz regularly received praise and positive feedback from Egozi, the Founder and CEO of Noogata, and also from Oren Raboy ("Raboy"), its Chief Technology Officer and Co-Founder.

13. In May/June 2021, Egozi offered Sohtz various positions with Noogata, including Chief Marketing Officer ("CMO"), but she turned them down because they would have represented a set-back in her career, as Noogata was a seed company with $12 million in funding, less than 30 employees and only one employee in New York, whereas in her prior role with Team8, she had been the CMO of a company that had $345 million in funding and a $2.3 billion valuation.

14. In August 2021, Amir Zilberstein ("Zilberstein"), Managing Partner of Team8 Enterprise, asked Sohtz to take on a role with Noogata to support it through its investor roadshow and help it raise its Series A, the first round of financing for a new business venture after seed capital, because she would lend credibility to the company because of her background and specialized experience.

15. In September 2021, Sohtz was named Chief Revenue Officer ("CRO") of Noogata, overseeing sales, partnerships, marketing and customer success, all while she continued to work as CMO at Team8.

16. For a number of months thereafter, Sohtz executed her duties for both Team8 and Noogata at 100% capacity and the stress of the workload began to impact her health.

17. In November 2021, it was agreed that Sohtz would resign from her position at Team8 and work exclusively for Noogata as Chief Revenue Officer (CRO) and General Manager for the Americas for one year and would then be named President of Noogata.

18. Zilberstein, who knew Sohtz's strong work ethic and skill, told Egozi and Raboy that Sohtz worked at a strong and fast pace and asked if they were capable of delivering and keeping pace, as they were notoriously known to be slow moving and unresponsive to Team8.

19. Egozi committed to be able to deliver at the expected pace.

20. Raboy told Sohtz that he was "humbled" by her decision to join Noogata.

21. Sohtz began working exclusively for Noogata in December 2021, working in the County, City and State of New York.

22. At the time Sohtz began working exclusively for Noogata and joined day-to-day meetings, she found the work environment so chaotic that, for the first time in her career, she required accommodations because of her learning disabilities, namely dyslexia and ADHD.

23. Sohtz had informally disclosed her disability to Egozi in June 2021, but had not requested an accommodation at that time.

24. On February 16, 2022, Sohtz formally advised Egozi and Raboy of her learning disabilities and requested reasonable accommodations, all of which was designed to provide structure and process to the frenzied and disorganized work environment that Sohtz experienced.

25. Initially, in the first two weeks following Sohtz's disclosure, Noogata and Egozi appeared supportive and willing to accommodate Sohtz.

26. All of that changed when, on March 2, 2022, Raboy made it clear during a 1:1 meeting with Sohtz that he viewed her disabilities and need for accommodations as a burden to Noogata, stating, "We all need to work around your accommodations."

27. Sohtz was upset by Raboy's callous remark and his derogatory reference to her disabilities and attempted to discuss it with Egozi, but Egozi was dismissive.

28. Egozi's dismissiveness was distressing to Sohtz and so she proposed arranging ADA training, which did nothing but make Egozi angry at Sohtz, who was only trying to protect herself from being viewed differently because she is disabled.

29. On March 3, 2022, during a leadership meeting, Sohtz was accused of being rude and condescending for (i) asking the team to speak English and not Hebrew since there was no

translator, which was a reasonable request, and (ii) booking appointments through her Executive Assistant, which she only did to obtain some order and process in her workplace.

30. On March 3, 2022, Egozi told Sohtz to "take some time off" so that the Israeli team could "adjust" to Sohtz.

31. Sohtz had been working well with the Israel team that reported to her and there was nothing for them to "adjust" to, so that this request caused Sohtz to fear how she would be viewed in her workplace and was humiliating to her.

32. On March 7, 2022, Egozi spoke with Sohtz while she was out of the office and advised her that he no longer considered her a "good fit" for Noogata and that he did not think the employment relationship would work out.

33. Sohtz was devastated to learn that her employment might be terminated following the disclosure of her disabilities, and she became emotional on the call.

34. Egozi agreed to continue the discussion of Sohtz's role at Noogata when she returned to the office after the "time off" that Egozi had requested.

35. During a meeting with Egozi on March 15, 2022, Egozi agreed that Sohtz could remain at Noogata but only as Chief Marketing Officer, which represented a demotion from Sohtz's position as CRO.

36. Sohtz protested this adverse action and in an email on March 15, 2022.

37. Egozi thereafter reversed his decision demoting Sohtz and allowed her to remain in the role of CRO, but raised concerns about Sohtz's leadership style, specifically accusing her of causing "friction," misinterpreting statements she had made and recasting her need for order and process into criticisms about her attitude.

38. Egozi's concerns about Sohtz's "leadership style" was a manufactured pretext to mask the fact that his animosity was motivated by Sohtz's disabilities and request for an accommodation.

39. Sohtz continued to work hard and pressed for accountability, order and processes where there had been none, but when she raised her concerns to Egozi, she was met with increasing hostility and criticism by Egozi.

40. Only by way of example, Egozi degraded Sohtz with comments such as, only by way of example: (i) "Can we PLEASE focus on work," when that was what she was doing; (ii) "I am asking you to stop this discussion as it is indicative of the wrong attitude and is not productive," when supervising her team and escalating concerns was part of her very senior role; and (iii) basely accusing Sohtz of "attacking" him when Sohtz spoke to Egozi about his not having communicated information to her about a candidate that she had recruited and would report to her.

41. Furthermore, Egozi began to systematically remove Sohtz's job responsibilities from her, cut her out of various processes for which she was responsible and demean and insult her by trying to create the impression that her attitude and performance were somehow deficient.

42. Sohtz became increasingly concerned that Noogata was trying to establish a pretext to support a performance based termination in order to cover up disability discrimination.

43. On April 7, 2022, Sohtz submitted a written complaint of disability discrimination to Noogata, which was a protected activity under the New York City Human Rights Laws.

44. Sohtz also retained counsel who sent a letter to Noogata on April 8, 2022, and her attorney was thereafter in contact with counsel for Noogata, which was further protected activity of which Noogata and Egozi were aware.

45. Sohtz was terminated on April 29, 2022, just three weeks after Sohtz first protested discrimination.

46. Sohtz was terminated for pretextual reasons outlined in an email sent on April 29, 2022 that was forwarded to her counsel – not her – including the outrageous claim that Sohtz used business expenses to pay for her membership in a personal club, which was completely false.

47. The remarkably close temporal proximity between Sohtz's complaints of discrimination and her termination confirms that the real reason Sohtz was fired was to punish her for her complaints of discrimination, and also because of Noogata and Egozi's discriminatory bias against Sohtz for being disabled and requiring an accommodation.

48. As a result of Defendants' discriminatory conduct, Sohtz has suffered the adverse effects of disability discrimination and retaliation, which includes damages to the quality of her life, her self-esteem, self-respect and financial and emotional well-being because she was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Sohtz into the future.

49. Here, Defendants' conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measure of relief to which Sohtz may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their discriminatory conduct in order to deter them and others similarly situated from engaging in such conduct in the future.

## AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF SOHTZ AGAINST DEFENDANTS FOR DISABILITY DISCRIMINATION IN VIOLATION OF §8-107(1)(a) OF THE NEW YORK CITY HUMAN RIGHTS LAW

50. Sohtz repeats, re-alleges and incorporates in full paragraphs 1 through 49 of this Complaint as though fully set forth at length herein.

51. At the time Sohtz was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her disabilities, namely dyslexia and ADHD.

52. Sohtz had disabilities within the meaning of §8-102 of the New York City Human Rights Law because she has a "[p]hysical, medical, mental or psychological impairment."

53. Throughout the time of her employment with Noogata and Egozi, Sohtz was fully qualified for her position and was in a position to continue working in that capacity.

54. Noogata and Egozi treated Sohtz less well because of her disabilities and took adverse employment action against her by demeaning her because of her disabilities and ultimately terminating her after she requested a reasonable accommodation.

55. The circumstances surrounding Noogata and Egozi's treatment of Sohtz, including humiliating Sohtz by telling her that Noogata would have to "work around" her disabilities and that the Israeli team would have to learn to "adjust to her," expressing the desire to terminate her because she was not a good fit and then demoting her following her disclosure of her disabilities, manufacturing pretextual criticisms of Sohtz's performance then terminating her, as well as the remarkably close temporal proximity between Noogata and Egozi's learning of Sohtz's need for an accommodation and her termination, gives rise to a very real inference that Noogata and Egozi's actions against Sohtz were motivated by disability discrimination.

56. The aforementioned acts of Noogata and Egozi constitute unlawful discrimination against Sohtz in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "the New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . disability . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

57. As a result of Noogata and Egozi's violation of the New York City Human Rights Law §8-107(1)(a), Noogata and Egozi are liable to Sohtz pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

58. Sohtz has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Noogata and Egozi' outrageous conduct in violation of Sohtz's human rights, all of which has impacted her well-being and the quality of her life.

59. As a direct and proximate result of Noogata and Egozi' discriminatory conduct complained of herein, Sohtz has suffered damages, injuries and losses, both actual and prospective, which include damage to her career and the emotional pain and suffering she has been caused to suffer and continues to suffer, all of which Sohtz alleges to be in the amount of Four Million Dollars ($4,000,000).

60. Here, Noogata and Egozi' conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to

9

amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measures of relief to which Sohtz may properly be entitled herein, Noogata and Egozi should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Six Million Dollars ($6,000,000), in order to deter them and others similarly situated from engaging in such conduct in the future.

61. Sohtz, therefore, seeks judgment against Noogata and Egozi on this First Cause of Action, including, among other things, for compensatory damages in the sum of Four Million Dollars ($4,000,000), and the additional further sum of Six Million Dollars ($6,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Ten Million Dollars ($10,000,000).

**AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF
SOHTZ AGAINST NOOGATA AND EGOZI FOR REFUSING
TO ENGAGE IN THE COOPERATIVE DIALOGUE IN VIOLATION
OF §8-107(28) OF THE NEW YORK CITY HUMAN RIGHTS LAW**

62. Sohtz repeats, re-alleges and incorporates in full paragraphs 1 through 61 of this Complaint as though fully set forth at length herein.

63. Noogata and Egozi was obligated to engage in a cooperative dialogue with Sohtz related to her disabilities under the New York City Human Rights Law.

64. While Noogata and Egozi initially appeared supportive of accommodating Sohtz, they never provided the requested accommodations and terminated her without engaging in any dialogue with her about finding an accommodation that would work for both Sohtz, Noogata and Egozi.

65. The aforementioned acts of Noogata and Egozi constitute a violation of §8-107(28)(a)(2) of the New York City Human Rights Law, which specifically applies to "disability" and provides, *inter alia* that:

> It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation.

66. Section 8-107(28)(d) required Noogata and Egozi, "[u]pon reaching a final determination at the conclusion of a cooperative dialogue," to provide Sohtz with "a written final determination identifying any accommodation granted or denied," yet Noogata and Egozi failed to do so.

67. As a result of Noogata and Egozi's violations of the New York City Human Rights Law §8-107(28), Noogata and Egozi are liable to Sohtz pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

68. Sohtz has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Noogata and Egozi' outrageous conduct in violation of Sohtz's human rights, all of which has impacted her well-being and the quality of her life, and which Sohtz alleges to be in the amount of Four Million Dollars ($4,000,000).

69. Here, Noogata and Egozi's conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measures of relief to which Sohtz may properly be entitled herein, Noogata and Egozi should additionally be required to pay punitive damages as punishment for

their discriminatory conduct in the further amount of Six Million Dollars ($6,000,000), in order to deter them and others similarly situated from engaging in such conduct in the future.

70. Sohtz, therefore, seeks judgment against Noogata and Egozi on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Four Million Dollars ($4,000,000), and the additional further sum of Six Million Dollars ($6,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Ten Million Dollars ($10,000,000).

### AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF SOHTZ AGAINST NOOGATA AND EGOZI FOR FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF §8-107(15)(a) OF THE NEW YORK CITY HUMAN RIGHTS LAW

71. Sohtz repeats, re-alleges and incorporates in full paragraphs 1 through 70 of this Complaint as though fully set forth at length herein.

72. Noogata and Egozi's failure to provide Sohtz with a reasonable accommodation and termination of Sohtz because she requested a reasonable accommodation violated §8-107(15)(a) of the New York City Human Rights Law, which provides:

> [I]t is an unlawful discriminatory practice for any person prohibited by the provisions of this section from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity.

73. As a result of Noogata and Egozi's violations of the New York City Human Rights Law §8-107 (15)(a), Noogata and Egozi are liable to Sohtz pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

74. Sohtz has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Noogata and Egozi's outrageous conduct in violation of Sohtz's human rights, all of which has impacted her well-being and the quality of her life, and which Sohtz alleges to be in the amount of Four Million Dollars ($4,000,000).

75. Here, Noogata and Egozi's conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measures of relief to which Sohtz may properly be entitled herein, Noogata and Egozi should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Six Million Dollars ($10,000,000), in order to deter them and others similarly situated from engaging in such conduct in the future.

76. Sohtz, therefore, seeks judgment against Noogata and Egozi on this Third Cause of Action, including, among other things, for compensatory damages in the sum of Four Million Dollars ($4,000,000), and the additional further sum of Six Million Dollars ($6,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Ten Million Dollars ($10,000,000).

### AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF SOHTZ AGAINST NOOGATA AND EGOZI FOR RETALIATION IN VIOLATION OF §8-107(7)(i) OF THE NEW YORK CITY HUMAN RIGHTS LAW

77. Sohtz repeats, re-alleges and incorporates in full paragraphs 1 through 76 of this Complaint as though fully set forth at length herein.

78. Each time that Sohtz protested disability discrimination in her workplace, she was

engaged in a protected activity under the New York City Human Rights Law of which Defendants were aware.

79. As a proximate result of Sohtz engaging in protected activities under the New York City Human Rights Law, Sohtz suffered adverse employment action that culminated in her unlawful termination on April 29, 2022.

80. The remarkably close temporal proximity between Sohtz's complaints of discrimination starting on April 7, 2022, and her termination just 15 days later on April 29, 2022, in addition to the falsity of the reason offered, demonstrates that her termination was motivated, at least in part, by unlawful retaliation.

81. The aforementioned acts of Defendants constitute unlawful retaliation against Sohtz in violation of §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

82. As a result of Defendants' violations of the New York City Human Rights Law §8-107(7), Defendants are liable to Sohtz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

83. Sohtz has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Noogata and Egozi's outrageous conduct in violation of Sohtz's human rights, all of which has impacted her well-being and the quality of her life, and which Sohtz alleges to be in the amount of Four Million Dollars ($4,000,000).

84.     Here, Noogata and Egozi's conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measures of relief to which Sohtz may properly be entitled herein, Noogata and Egozi should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Six Million Dollars ($10,000,000), in order to deter them and others similarly situated from engaging in such conduct in the future.

85.     Sohtz, therefore, seeks judgment against Noogata and Egozi on this Fourth Cause of Action, including, among other things, for compensatory damages in the sum of Four Million Dollars ($4,000,000), and the additional further sum of Six Million Dollars ($6,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Ten Million Dollars ($10,000,000).

**AS FOR A FIFTH CAUSE OF ACTION ON BEHALF
OF SOHTZ AGAINST NOOGATA AND EGOZI
FOR RETALIATION IN VIOLATION OF §8-107(7)(v)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

86.     Sohtz repeats, re-alleges and incorporates in full paragraphs 1 through 85 of this Complaint as though fully set forth at length herein

87.     Noogata and Egozi's termination of Sohtz because she requested a reasonable accommodation and engaged in protected activities by complaint about disability discrimination and retaining counsel who was in contact with Noogata's counsel violated §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person

15

>has . . . (v) requested a reasonable accommodation under this chapter
>. . .

88. As a result of Noogata and Egozi's violations of the New York City Human Rights Law §8-107(7), Noogata and Egozi are liable to Sohtz pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

89. Sohtz has been caused to suffer injuries resulting in financial loss, emotional anguish and suffering, both actual and prospective, and has been humiliated, demeaned and otherwise degraded because of Noogata and Egozi' outrageous conduct in violation of Sohtz's human rights, all of which has impacted her well-being and the quality of her life, and which Sohtz alleges to be in the amount of Four Million Dollars ($4,000,000).

90. Here, Noogata and Egozi's conduct towards Sohtz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measures of relief to which Sohtz may properly be entitled herein, Noogata and Egozi should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Six Million Dollars ($6,000,000), in order to deter them and others similarly situated from engaging in such conduct in the future.

91. Sohtz, therefore, seeks judgment against Noogata and Egozi on this Fifth Cause of Action, including, among other things, for compensatory damages in the sum of Four Million Dollars ($4,000,000), and the additional further sum of Six Million Dollars ($6,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Ten Million Dollars ($10,000,000).

## AS AND FOR A SIXTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST EGOZI FOR AIDING AND ABETTING DISCRIMINATION & RETALIATION IN VIOLATION OF §8-107(6) OF THE NEW YORK CITY HUMAN RIGHTS LAW

92. Sohtz repeats, realleges and incorporates in full paragraphs 1 through 91 of this Complaint, as though fully set forth at length herein

93. Should Egozi be determined to not be individually liable under Administrative Code §8-107(a)(1) or §8-107(7) for any reason, then he should be held personally liable for aiding, abetting and compelling the discrimination and retaliation against Sohtz, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

94. As more specifically detailed in prior paragraphs of this Complaint, all of which re deemed a part hereof, Egozi aided, abetted or compelled the discrimination against Sohtz, so that he should be held personally liable for unlawful aiding and abetting against Sohtz in violation of §8-107(6) of the New York City Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

95. Egozi aided and abetted Noogata to engage in the conduct complained of and, as a direct result, Sohtz has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Sohtz's conduct upon Sohtz's employment, career and life's normal pursuits.

96. As a direct and proximate result of the Egozi's violation of the New York City Human Rights Law, he is individually liable to Sohtz pursuant to §8-502(a) of said statute for damages and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established

17

97. As a direct and proximate result of the Egozi's conduct complained of herein, Sohtz has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that Sohtz seeks in this Sixth Cause of Action compensatory damages in the amount of Four Million Dollars ($4,000,000).

98. Here, Egozi's conduct towards Sohtz shows that he acted with willful or wanton negligence, or recklessness, or a conscious disregard of Sohtz's rights under the New York City Human Rights Law, or that their unlawful actions against Sohtz were so reckless as to amount to a disregard of Sohtz's rights, so that in addition to all the damages inflicted upon Sohtz and in addition to all the measure of relief to which Sohtz may properly be entitled herein, Egozi should additionally be required to pay punitive damages as punishment for his discriminatory and retaliatory conduct in the further amount of Six Million ($6,000,000) Dollars, in order to deter them and others similarly situated from engaging in such conduct in the future.

99. Sohtz, therefore, seeks compensatory damages on this Sixth Cause of Action against Egozi for, including and among other things, the financial and emotional harm inflicted upon her in the sum of Four Million ($4,000,000) Dollars, and an additional and further sum of Six Million ($6,000,000) Dollars for punitive damages, making a total of Ten Million ($10,000,000) Dollars, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**WHEREFORE,** Sohtz demands judgment against Noogata and Egozi on the First Cause of Action in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); on the Second Cause of Action in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million

Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); on the Third Cause of Action in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); on the Fourth Cause of Action in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); on the Fifth Cause of Action in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); on the Sixth Cause of Action in the alternative against Egozi in the sum of Four Million Dollars ($4,000,000) in compensatory damages and the further and additional sum of Six Million Dollars ($6,000,000) in punitive damages for a total of Ten Million Dollars ($10,000,000); plus, on each Cause of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees as is permitted under the law; and for such other and further relief as this Court may deem just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By:_____
DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
